**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KEVIN BROWN, | * |
| | * |
| Plaintiff, | * |
| v. | * |
| | *   Case No. 4:25-cv-01472 |
| LUXLIVING, LLC, | * |
| | * |
| THE MCKENZIE-ANNAPURNA ONE, LLC, | * |
| | * |
| BURKHART ELLIOTT CREATIVE, LLC | * |
| d/b/a BE CREATIVE | * |
| | * |
| VE DESIGN GROUP OF MO, LLC, | * |
| | * |
| BIG SUR INVESTMENTS, LLC | * |
| d/b/a BIG SUR CONSTRUCTION, LLC, | * |
| | * |
| Defendants. | * |

**COMPLAINT**

Comes now Plaintiff, Kevin Brown ("Plaintiff"), by and through counsel, and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this action against Defendants, LuxLiving, LLC, The McKenzie-Annapurna One, LLC, Burkhart Elliott Creative, LLC d/b/a BE Creative, VE Design Group of MO, LLC, and Big Sur Investments, LLC d/b/a Big Sur Construction, LLC (collectively, "Defendants") for violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §§ 3601-3619.

2. Defendants, who are the developers, architects, builders, contractors, and/ or owners of dwelling units and apartment complex, McKenzie Apartments ("McKenzie"), a 252

unit housing community on the real property, improvements, and site identified by St. Louis County locator number 18K430512 and located at 8400 Delmar Boulevard in St. Louis, Missouri (the "Property"), failed to construct the Property in compliance with the FHAA's accessibility and usability requirements. Defendant's violations of the FHAA have serious and significant consequences for people with disabilities.

3.  According to the 2010 Americans with Disabilities Study conducted by the U.S. Census Bureau, more than 56 million Americans (nearly one in five) have some form of disability. Of that number, more than 3.6 million people over the age of 15 use wheelchairs, and that number is expected to increase as the population ages and medical care allows people with disabilities to live longer and fuller lives. Accessible housing is an essential means of ensuring that the many members of the community who have disabilities can fully participate in community life.

4.  To address this need, Congress established architectural requirements in the FHAA for the design and construction of residential housing. The FHAA requires, builders, architects, owners, and others involved in the design, construction, and rental of housing to ensure that multifamily apartment complexes do not contain architectural barriers that impede access or usability or exclude individuals with disabilities from residing in and visiting the complexes.

5.  Plaintiff seeks monetary, declaratory and injunctive relief arising from violations of the accessibility requirements of the FHAA. The FHAA requires that certain apartment complexes built for first occupancy after March 13, 1991 be designed and constructed with accessible and useable features for people with disabilities.

6.  Plaintiff, Kevin Brown is a handicapped individual who uses a wheelchair which impacts his mobility and substantially limits his ability to engage in activities of daily living. Plaintiff brings this civil rights action against Defendants for failing to design and/ or construct

apartments with accessible and useable features for people with disabilities as required by the FHAA. Defendant's apartment complex, McKenzie is a multi-family dwelling that has numerous barriers to access. Therefore, Plaintiff seeks a declaration that Defendants' apartment complex violates federal law and an injunction requiring Defendants to comply with the requirements of the FHAA.

7. The Defendants' violations of the FHAA have thwarted Congressional efforts to eradicate housing discrimination against people with disabilities and rendered units and/or facilities unavailable to people with disabilities. Enforcement of the FHAA against Defendant is necessary because of the extensive nature of the civil rights violations at apartments designed, constructed and/or owned by Defendant.

8. Through designing and constructing McKenzie in violation of the FHAA, Defendants have communicated to that people with disabilities are not welcome at the Property and have rendered its units unavailable to and unsafe for people with disabilities. As a result, Plaintiff seeks monetary, declaratory, and injunctive relief to ensure that McKenzie is made accessible to individuals with disabilities as required by federal law and to obtain compensation for the injuries that he has suffered, as alleged herein.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § § 3613(a).

10. Plaintiff does not assert any state law claims.

11. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) because Plaintiff's claims asserted herein arose, and a substantial part of the acts and omissions giving rise to such claims occurred, in this judicial district, Defendants do business in this judicial district, and Plaintiff's claims concern or otherwise relate to real property located in this judicial

district.

## PARTIES

12. Plaintiff, Kevin Brown, is and, at all times relevant hereto, was a resident of the State of Missouri. Plaintiff is and, at all times relevant hereto, has been legally handicapped and is therefore a member of a protected class under the FHAA.

13. Defendant, LuxLiving, LLC ("LuxLiving"") is a limited liability company organized under the laws of Missouri and a developer of the Property.

14. Upon information and belief LuxLiving through its agents and/or employees participated in the design and/or construction of the Property and is believed therefore to be responsible in part for non-compliant features of the Property.

15. Defendant, The McKenzie-Annapurna One, LLC ("McKenzie-Annapurna") is a limited liability company organized under the laws of Missouri and an owner and developer of the Property.

16. Upon information and belief McKenzie-Annapurna through its agents and/or employees participated in the design and/or construction of the Property and is believed therefore to be responsible in part for non-compliant features of the Property.

17. Defendant, Burkhart Elliott Creative, LLC d/b/a BE Creative ("BE Creative") is a corporation organized under the laws of Missouri.

18. BE Creative was an architect for McKenzie, through its agents and/or employees participated in the design and/or construction of the Property, is believed to be responsible in part for any defects in the blueprint drawings and designs of non-compliant features of dwelling units and common use areas at McKenzie, and is therefore responsible for the design and construction of the non-compliant features of the Property.

19. Defendant, VE Design Group of MO, LLC ("VE Design") was an architect for

McKenzie, through its agents and/or employees participated in the design and/or construction of the Property, is believed to be responsible in part for any defects in the blueprint drawings and designs of non-compliant features of dwelling units and common use areas at McKenzie, and is therefore responsible for the design and construction of the non-compliant features of the Property.

20. Defendant, Big Sur Investments, LLC d/b/a Big Sur Construction, LLC ("Big Sur") is a limited liability organized under the laws of Missouri.

21. Big Sur was the general contractor for McKenzie and through its agents and/or employees participated in the design and/or construction of the Property and is therefore responsible for the design and construction of the non-compliant features of the Property.

22. In doing the acts or in omitting to act as alleged in this Complaint, each employee, officer or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority or the alleged acts or omissions of each employee, officer, or agent was subsequently ratified and adopted by each Defendant as principal.

### STATUTORY AND   REGULATORY FRAMEWORK

23. Congress enacted the FHAA design and construction accessibility requirements as  part of a comprehensive revision of the FHAA to prohibit discrimination on the basis of disability.  The debates and legislative history of the FHAA reflect Congressional findings that a person using  a wheelchair or other mobility aid is just as effectively excluded from the opportunity to live in a  particular dwelling by steps or thresholds at building or unit entrances and by too narrow doorways as by a posted sign saying "No Handicapped People Allowed."

24. In considering the  1988 disability amendments to the FHAA, Congress stressed that enforcement of civil rights laws  is necessary to protect people with disabilities from the "devastating" impact of housing  discrimination, including the "architectural barriers" erected

by developers who fail to construct dwellings and public accommodations accessible to and useable by people with disabilities. HR. REP. NO. 100-711, at 25(1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2186.

25. In response to Congressional findings, the FHAA mandated that every multi-family apartment building containing four (4) or more units and built for first occupancy after March 13, 1991 ("covered multi-family dwellings") be subject to certain design and construction requirements. Congress specifically rejected the approach of requiring only a specific number or percentage of units be fully accessible. Instead, Congress decided that all covered multifamily dwellings units must comply with the Act's design and construction requirements.

26. Under the FHAA, all ground floor units as well as all units served by an elevator must comply with the following requirements:

    a. There must be an accessible building entrance on an accessible route;

    b. Public-use and common-use areas must be readily accessible to, and usable by, people with disabilities;

    c. Doors into and within covered units must be sufficiently wide to allow passage by people who use wheelchairs;

    d. There must be an accessible route into and through the dwelling;

    e. Light switches, electrical outlets, thermostats and other environmental controls must be in accessible locations;

    f. There must be reinforcements in bathroom walls that allow for the later installation of grab bars; and

    g. There must be usable kitchens and bathrooms so that an individual who uses a wheelchair can maneuver about the space.

27. Congress viewed the accessibility requirements imposed by § 3604(f)(3)(C) as "modest." It did not intend to impose "unreasonable requirements" or a "standard of total accessibility," but rather saw the "basic features" required by § 3604(f)(3)(C) as amounting to "minimal standards" that would be "easy to incorporate in housing design and construction." Furthermore, according to the House Report, the § 3604(f)(3)(C) requirements could be met without making new multi-family housing "look unusual" and without "significant additional costs."

28. Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated final FHAA design and construction regulations in January 1989, see 24 C.F.R § 100.205 (2008), and published the final Fair Housing Act Accessibility Guidelines on March 6, 1991 (hereinafter "FHAAG") which incorporates the requirements of the American National Standards Institute for buildings and facilities providing accessibility and usability for physically handicapped people, A117-I-1986 (hereinafter "ANSI"), see 56 Fed. Reg. 9472 (Mar. 6, 1991), and the Fair Housing Act Design Manual in August 1996, which was revised in August 1998.

29. Defendants failed to comply with the FHAAG and ANSI in the design and construction of the Property. Defendants also failed to comply with any other recognized objective FHAA or ADA standard for accessibility.

30. The FHAA expressly provides for private enforcement by an "aggrieved person" defined as a person who claims to have been injured by a discriminatory housing practice or believes that such person will be injured by a discriminatory housing practice. 42 U.S.C. § 3613(i)(1)(A) (private right of action); 42 U.S.C. § 36021. (defining aggrieved person). In fact, the Supreme Court has stated that private enforcement is the primary method of obtaining compliance with the FHAA. *Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205,

209 (1977).

31. The FHAA also provides that a private plaintiff may be awarded actual and punitive damages, as well as a "permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." 42 U.S.C. § 3613 (c)(1). Thus, under the FHAA, the court may order injunctive relief to remediate the discriminatory barriers at the property.

32. Notably, the Supreme Court has recognized that discrimination violative of the FHAA injures not only the members of a protected class, but also other tenants at an apartment complex who are denied the benefits of associating with those persons. *Trafficante*, 409 U.S. at 209-10. Thus, private enforcement benefits not only those against whom discrimination is directed, but the other residents. *Id*. at 211.

## FACTUAL BACKGROUND

### The Property

33. The Property is an apartment complex located at 8400 Delmar Boulevard. The Property consists of approximately 252 residential units in one building and the apartment complex is served by elevators.

34. The Property was designed and constructed for first occupancy after _____.

35. The Property contains "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7).

36. The covered multifamily dwellings at the Property are subject to the requirements of 42 U.S.C. § 3604(f). These include all ground floor units and units served by elevators.

37. The failure of Defendants to design and construct the Property in compliance with 42 U.S.C. § 3604(f)(3)(C) occurred during the design and construction of the Property and continued during the marketing of all units for lease.

**Plaintiff's Investigation**

38. Plaintiff was researching apartments in the St. Louis area. Plaintiff visited the Property in November 2024 and looked at one or more units. Plaintiff observed that there were accessibility barriers that would interfere with his ability to access and use the facilities.

39. The existence of barriers and the lack of accessible features deterred Plaintiff from renting an apartment at the Property.

40. As a result of Defendants' non-compliance with the FHAA, Plaintiff, unlike persons without disabilities, cannot independently use the features of Property.

41. Defendants' apartments lack various mandatory elements required by the FHAA, to make the apartments accessible and useable for people with disabilities.

42. As a handicapped individual and advocate for same, Plaintiff is concerned whether apartments are accessible and useable for people with disabilities.

43. In addition, the barriers at the Property will interfere with residents associating with disabled persons who encounter the barriers at the Property, and disabled relatives and visitors to tenants will encounter the barriers and be deterred from accessing the Property.

44. Because the barriers at the Property are structural, it is inevitable that disabled persons visiting the Property will encounter them, thereby causing them the very injuries sought to be prevented by the FHAA's design and construction requirements. The barriers at the Property present a continuing and ongoing pattern and practice of discrimination against disabled persons. Such discrimination creates a presumption that injunctive relief to remedy the discrimination is necessary. *United States v. Balistrieri*, 981 F.2d 16, 934 (7th Cir. 1992).

45. Absent injunctive relief to remedy the barriers, the barriers will exist in perpetuity at the Property.

46. Without injunctive relief, Plaintiff and others will continue to be unable to fully access and use the Property in violation of his rights under the FHAA.

47. Plaintiff is currently in the market for an apartment in the area of the subject property, Plaintiff intends to return to the subject property and other rental property nearby to pursue a potential rental of an apartment, and Plaintiff expects to return to the Property once it has been remediated.

48. Plaintiff has been injured by the Defendants' discriminatory practices and failure to design and/or construct apartments that are constructed with accessible and useable features for people with disabilities as required by the FHAA. These injuries include experiencing discrimination and being deterred from renting at the Property. These blatant violations effectively communicate that people with disabilities are not welcome in the Property.

49. Without injunctive relief, Plaintiff and others will continue to be unable to fully access and use the Property in violation of their rights under the FHAA.

**FHAA Violations**

50. The violations of 42 U.S.C. § 3604(f)(3)(C) by Defendants at the Property include, but are not limited to, those outlined below. These allegations represent just some of the evidence of the failure by Defendants to design and construct covered units and the public and common use areas in accord with 42 U.S.C. §3604(f)(3)(C) and are not intended as an exhaustive inventory of such violations. Plaintiff anticipates that an inspection of the Property will identify additional violations and non-compliant features at the Property.

51. Defendants have failed to design and/or construct public and common-use areas that are readily accessible to and usable by people with disabilities in compliance with 42 U.S.C.

§ 3604(f)(3)(C)(i) and 24 C.F.R. §100.205(c)(1) (2008). For example:

    a.    The centralized mailbox center does not have accessible mailboxes, as the mailbox keyholes and "outgoing mail" slots are located above maximum allowable reach range and are, therefore, too high for persons who use wheelchairs;

    b.    The point of sale element in the vending area does not have accessible controls, as the element is located above the required reach range to the highest operable control and, therefore, are too high for persons who use wheelchairs;

    c.    The accessible route leading the building entrance has a slope greater than 5% and has not been constructed as a compliant ramp and, therefore, the route is not accessible for persons who use wheelchairs;

    d.    The dispensers in the movie theater area does not have accessible controls, as the dispensers are located above the required reach range to the highest operable control and, therefore, are too high for persons who use wheelchairs; and

    e.    The coffee machine in the tenant common area does not have accessible controls, as the coffee machine is located above the required reach range to the highest operable control and, therefore, are too high for persons who use wheelchairs.

52.    Upon information and belief Defendants have failed to design and/or construct usable bathrooms and kitchens such that an individual in a wheelchair can maneuver about the space in compliance with 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) and 24 C.F.R. § l00.205(c)(3)(iv) (2008).

53.    Defendants have failed to design and/or construct light switches, electrical outlets, thermostats and other environmental controls in accessible locations in compliance with 42 U.S.C. § 3604 (f)(3)(C)D(iii)(II) and 24 C.F.R. § 100.205(c)(3)(ii) (2008). For example:

    a.    The interiors of the units at the Property have HVAC thermostat controls

located above the maximum side reach and, therefore, are too high for persons who use wheelchairs;

    b.    The interiors of the units at the Property have electrical panel and controls located above the maximum reach range and, therefore, are too high for persons who use wheelchairs; and

    c.    The interiors of the units at the Property have Alexa modules located above the maximum side reach and, therefore, are too high for persons who use wheelchairs.

54. Further, by failing to provide the accessible and useable features required by 42 U.S.C. § 3604(f)(3)(C) at the Property for people with physical disabilities, including but not limited to those outlined above, Defendants have violated 42 U.S.C. § 3604(f)(1) and/or have discriminated against people with physical disabilities in the terms, conditions or privileges of the rental of dwellings in violation of 42 U.S.C. § 3604(f)(2).

55. The discriminatory violations described above are not an exhaustive list of the Defendants' current violations of the FHAA because Plaintiff was unable to access and assess all areas of the subject premises due to the lack of accessibility encountered.

56. A complete list of the subject location's FHAA violations involving accessibility and affecting the Plaintiff as a wheelchair user, and the remedial measures necessary to remove same, will require entry of the Property and on-site inspection by Plaintiff's representatives pursuant to Rule 34 of the Federal Rules of Civil Procedure.

## CAUSE OF ACTION
**Violation of FHAA, 42 U.S.C. § 3601, et seq.**

57. The allegations in the preceding paragraphs are incorporated by reference.

58. The Property contains residential apartment units that are "dwelling[s]" within the meaning of 42 U.S.C. § 3602(b).

59. Plaintiff has standing to sue as an "aggrieved person" as defined in 42 U.S.C. § 3602(i) which includes any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur.

60. At the Property, all ground-floor units and upper floor units served by elevators not in townhomes are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(A), were built for first occupancy after March 13, 1991, and are subject to the design and construction requirements set forth in 42 U.S.C. § 3604(f)(3)(C) of the FHAA. The public-use and common-use areas of the Property are also subject to the design and construction requirements of 42 USC. § 3604(f)(3)(C).

61. Through the actions and inactions described above, the Defendants have:

    a. discriminated in the rental of, or otherwise made unavailable or denied, dwellings to persons because of their disabilities in violation of 42 U.S.C. § 3604(f)(1);

    b. discriminated against persons because of their disabilities in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2); and

    c. failed to design and construct dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, 24 C.F.R. Part 100.205 (2008).

62. Defendants' discriminatory conduct has damaged Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court for entry of judgment against Defendants and for Plaintiff granting:

    a. A declaratory judgment that at the commencement of this action Defendants

were in violation of the specific requirements of the FHAA, described above, and the relevant implementing regulations of the FHAA;

    b.    An injunction, pursuant to 42 U.S.C. § 3613(c)(l)(a), enjoining Defendants, their respective officers, directors, employees, agents, successors, assigns and all other persons in active concert or participation with any of them, both temporarily during the pendency of this action, and permanently from:

        1.    with regard to the Property, failing or refusing to bring the covered dwelling units and the public use and common use areas into compliance with the requirements of the Fair Housing Amendments Act ("FHAA") 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, the Americans with Disabilities Act ("ADA") and the applicable regulations; to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court; and to perform or allow such other acts as may be necessary to effectuate any judgment of this Court against them; failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations;

        2.    failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations; and

        3.    failing or refusing to take such steps as will eliminate, to the fullest extent practicable, the lingering effects of the Defendants' unlawful housing practices.

    c.    An injunction enjoining Defendants from failing or refusing to permit the survey of any of their covered properties that were designed and/or built by the Defendants and any retrofits ordered by the Court to be made at such property, to also comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this

Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the Defendants;

      d.      Award such damages as would fully compensate Plaintiff for his injuries incurred as a result of the Defendants' discriminatory housing practices and conduct, pursuant to 42 U.S.C. § 3613(c)(1)(a);

      e.      Award such punitive damages against Defendants as is proper under law, pursuant to 42 U.S.C. § 3613(c)(1)(a);

      f.      Award of costs of suit;

      g.      Award of reasonable attorneys' fees, expenses, and monitoring fees pursuant to 42 U.S.C. § 3613(c)(2), and other principles of law and equity; and

      h.      Award of such other relief the Court deems just, equitable and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all counts and claims so triable.

**Dated**: September 30, 2025                                    Respectfully submitted,

                                                                     **JONATHAN F. ANDRES PC**

                                                      By: /s/ Jonathan F. Andres
                                                            Jonathan F. Andres MO39531
                                                            1127 Hoot Owl Rd.
                                                            St. Louis, MO 63005
                                                            Tel. (636) 633-1208
                                                            andres@andreslawpc.com

                                                            *Attorney for Kevin Brown*

**DEFENDANTS TO BE SERVED:**

**LUXLIVING, LLC**
Sid Chakraverty, Reg. Agent
1204 Dunston Dr.
St. Louis, M O 63146

**THE MCKENZIE-ANNAPURNA ONE, LLC**
Sid Chakraverty, Reg. Agent
1204 Dunston Dr.
St. Louis, M O 63146

**BURHART ELLIOTT CREATIVE, LLC**
Christian D. Horton, Reg. Agent
2805 S. Ingram Mill Rd.
Springfield, MO 65804

**VE DESIGN GROUP OF MO, LLC**
Christian D. Horton, Reg. Agent
2805 S. Ingram Mill Rd.
Springfield, MO 65804

**BIG SUR INVESTMENTS, LLC**
Ira M. Berkowitz, Reg. Agent
500 N. Skinker Blvd.
St. Louis, MO 63130