UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-01472-SRC |
| | ) | |
| LUXLIVING, LLC et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum and Order**

Kevin Brown—a "handicapped individual who uses a wheelchair"—visited McKenzie Apartments to look for a unit. But when he arrived, he allegedly observed various accessibility issues with the building. He therefore sues Defendants for violations of the Fair Housing Act. Defendants move to dismiss.

## I. Factual background

The Court accepts the following well-pleaded facts as true for purposes of Defendants' motions to dismiss. Kevin Brown is a "handicapped individual who uses a wheelchair." Doc. 33 at ¶ 6, *see id.* at ¶ 12. Defendants "are the developers, architects, builders, contractors, owners, and former owners" of McKenzie Apartments—an apartment complex. *Id.* at ¶ 2. Brown asserts that he was "researching apartments in the St. Louis area" when he visited McKenzie Apartments. *Id.* at ¶ 40; *see id.* at ¶¶ 2, 35. During his visit, he "looked at one or more units" and "observed . . . accessibility barriers that would interfere with his ability to access and use the facilities." *Id.* at ¶ 40. And because of "the existence of barriers and the lack of accessible features," he was "deterred . . . from renting an apartment at [McKenzie Apartments]." *Id.* at ¶ 41; *see also id.* at ¶¶ 53–55 (detailing specific barriers and lack of accessible features).

Brown also asserts that he is "currently in the market for an apartment in the area of the subject property." *Id.* at ¶ 49. And he "intends to return to the subject property and other rental property [sic] nearby to pursue a potential rental of an apartment, and [he] expects to return to" McKenzie Apartments once Defendants remediate the barriers. *Id.*

## II. Procedural background

In September 2025, Brown sued LuxLiving, LLC; The McKenzie-Annapurna One, LLC; Burkhart Elliott Creative, LLC; VE Design Group of MO, LLC; and Big Sur Investments, LLC. Doc. 1 at ¶ 1. A few months later, several Defendants moved to dismiss Brown's complaint for his failure to join a necessary party. Docs. 28, 29. Brown then filed an amended complaint adding McKenzie St. Louis, LLC. *See* doc. 33. Brown's amended complaint asserts that Defendants' construction of McKenzie Apartments violates the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601–3619. *See id.* Since then, the original defendants filed separate, but substantively similar, motions to dismiss arguing that Brown lacks Article III standing to bring this suit. *See* docs. 37, 40. And McKenzie St. Louis filed a separate motion to dismiss raising additional grounds for its dismissal from this case. *See* doc. 49. Now with Defendants' motions fully briefed, *see* docs. 38, 41, 45, 47, 48, 57, 64, 66, the Court addresses their challenge to the Court's jurisdiction.

## III. Article III standing

### A. Legal standard

To resolve any case on the merits, a court must have jurisdiction to do so. That includes ensuring that Brown satisfies the requirements of Article III standing. *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1156–57 (8th Cir. 2008). Article III of the United States Constitution, by its own terms, limits the jurisdiction of the federal courts to "Cases" and

"Controversies." U.S. Const. art. III, § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). That limitation, along with the corpus of federal constitutional standing caselaw that it animates, rests on a "single basic idea—the idea of separation of powers." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422 (2021) (citation omitted). The separation-of-powers function performed by constitutional standing doctrine is simple: it "serv[es] to identify those disputes which are appropriately resolved through the judicial process." *Lujan*, 504 U.S. at 560 (cleaned up). And because standing doctrine performs that critical function, it constitutes "an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.*

At the heart of standing doctrine is a core question: whether Brown has a "personal stake" in the matter at hand. *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 76 (2026). "As Justice Scalia memorably said, Article III requires a plaintiff to first answer a basic question: 'What's it to you?'" *F.D.A. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (quoting Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)).

Sufficiently answering that question requires Brown to show that: (i) he alleged a cognizable injury, (ii) the injury is "fairly traceable to the [Defendants'] allegedly unlawful conduct," and (iii) the injury is "likely to be redressed by the requested relief." *California v. Texas*, 593 U.S. 659, 668–69 (2021) (citation omitted). Brown, as "the party invoking federal jurisdiction[,] bears the burden of establishing standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (cleaned up). Finally, because "standing is not dispensed in gross," Brown "must demonstrate standing for each claim [he] press[es] against [Defendants] and for each form of relief that [he] seek[s]." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (cleaned up).

But "[a]t the pleadings stage, general factual allegations suffice to support standing." *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022).

**B. Injury**

"To establish an injury in fact, a plaintiff must show an injury that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)) (cleaned up). And when a plaintiff alleges an intangible harm, the Court must consider whether the alleged harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341. Though a plaintiff need not allege "an exact duplicate in American history and tradition," one cannot judge an injury's concreteness "based on contemporary, evolving beliefs about what kind of suits should be heard in federal courts." *TransUnion LLC*, 594 U.S. at 424–25; *see also Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 540 (8th Cir. 2024) ("Breezy declarations of an intangible yet concrete injury without support won't suffice." (cleaned up)).

In his amended complaint, Brown alleges two distinct injuries. First, he experienced discrimination and was deterred from renting an apartment. Doc. 33 at ¶¶ 50, 61. Second, because Brown "intends to return" to McKenzie Apartments, *id.* at ¶ 49, he "believes that [he] will be injured by a discriminatory housing practice that is about to occur," *id.* at ¶ 61. Defendants respond that Brown fails to plead any injury in fact. Doc. 38 at 4–8; doc. 41 at 2, 4–9.

**1. Fair Housing Act**

The Fair Housing Act "permits any 'aggrieved person' to bring a housing-discrimination lawsuit." *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 197 (2017) (quoting 42 U.S.C.

§ 3613(a)). The FHA "defines 'aggrieved person' as 'any person who' either 'claims to have been injured by a discriminatory housing practice' or believes that such an injury 'is about to occur.'" *Id.* (quoting 42 U.S.C. § 3602(i)). The Supreme Court has "repeatedly written that the FHA's definition of person 'aggrieved' reflects a congressional intent to confer standing . . . . as broadly as is permitted by Article III of the Constitution." *Id.* (citation omitted).

For instance, the Supreme Court allowed "suits by white tenants claiming that they were deprived benefits from interracial associations when discriminatory rental practices kept minorities out of their apartment complex." *Id.* at 198 (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209–12 (1972)). The Supreme Court also allowed a suit by "a village alleging that it lost tax revenue and had the racial balance of its community undermined by racial-steering practices," *id.* (citing *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 110–11 (1979)), and a suit by "a nonprofit organization that spent money to combat housing discrimination," *id.* (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

And when "Congress amended the FHA, it retained without significant change the definition of 'person aggrieved' that [the Supreme Court has] broadly construed." *Id.* (citation omitted). As relevant here, the FHA prohibits discrimination against:

> [A]ny person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—that person or a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available[.]

42 U.S.C. § 3604(f)(2)(A)–(B). The FHA then explains that "discrimination includes" designing or constructing certain dwellings that are inaccessible for handicapped individuals. *See* 42 U.S.C. § 3604(f)(3)(C)(i)–(iii).

The FHA also creates a private right of action for an "aggrieved person" to sue in federal court "to obtain appropriate relief with respect to such discriminatory housing practice," 42

U.S.C. § 3613(a)(1)(A), such as "actual or punitive damages" or "any permanent or temporary injunction" for "a discriminatory housing practice [that] has occurred or is about to occur," 42 U.S.C. § 3613(c)(1). And yet, "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III [of the Constitution]." *TransUnion*, 594 U.S. at 426.

The Supreme Court distinguished "between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 426–27. While the first plaintiff's "injury in law" doesn't create an "injury in fact," the second plaintiff "who [has] been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 426–27 (emphasis in original).

Defendants argue that Brown's claims fall into the first bucket—he "failed to plead that he suffered any concrete injury under the FHAA," that is "particularized to him." Doc. 41 at 4–5; *see* doc. 38 at 4. Because Brown "must demonstrate standing for each claim that [he] press[es] against [Defendants] and for each form of relief that [he] seek[s]," the Court addresses each injury in turn. *Murthy*, 603 U.S. at 61 (cleaned up).

**a. Past injury**

Regarding Brown's claims of past injury, the Court disagrees with Defendants. Brown asserts that he was "researching apartments in the St. Louis area" when he visited McKenzie Apartments. Doc. 33 at ¶ 40; *see id.* at ¶¶ 2, 35. During his visit, he "looked at one or more units" and "observed . . . accessibility barriers that would interfere with his ability to access and use the facilities." *Id.* at ¶ 40. And because of "the existence of barriers and the lack of

accessible features," he was "deterred . . . from renting an apartment at [McKenzie Apartments]." *Id.* at ¶ 41; *see also id.* at ¶¶ 53–55 (detailing specific barriers and lack of accessible features). He therefore alleges harm from experiencing discrimination and from being deterred from renting an apartment. *Id.* at ¶¶ 50, 61.

The parties agree that ADA case law is relevant to deciding Brown's standing to bring this case. *See* doc. 38 at 5–6, doc. 41 at 7–9, doc. 45 at 10–12; doc. 47 at 10–12. And in the ADA context, the Eighth Circuit found analogous dignitary injuries justiciable. *See Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000) (finding standing for a blind plaintiff who entered a shop but was unable to access a non-ADA-compliant restroom); *Davis v. Anthony, Inc.*, 886 F.3d 674, 678 (8th Cir. 2018) (noting that *Steger* supports finding standing "when the plaintiff encounters a violation in a building"); *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 724 (8th Cir. 2003) (finding that the "mere fact of discrimination offends the dignitary interest that the statutes are designed to protect, regardless of whether the discrimination worked any direct economic harm to the plaintiffs"); *cf. Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 696 (8th Cir. 2019) (finding that a plaintiff lacked standing "to sue over building violations when he never entered it"); *Davis v. Morris-Walker, LTD*, 922 F.3d 868 (8th Cir. 2019) (finding that "a plaintiff . . . who encountered ADA violations in one parking facility, lack[ed] standing to sue over alleged violations in a separate parking facility that [the plaintiff] never visited").

And even if Brown manufactured this incident, "he would still have a claim for nominal damages." *Shaver*, 350 F.3d at 725; *see also* 42 U.S.C. § 3613(c)(1) (allowing an aggrieved person to obtain actual damages for a discriminatory housing practice). The Court therefore finds that Brown has standing to pursue damages for encountering alleged FHA violations at McKenzie Apartments.

Defendants, however, seem to argue, without citing any Eighth Circuit precedent, that Brown must establish that he is a "tester" to have standing under the FHA. Doc. 48 at 3 (citing *Deboard v. BH Urb. Station, LLC*, No. 1:22-cv-02160-RLY-KMB, 2023 WL 11931165, at *3 (S.D. Ind. Mar. 14, 2023)). But "[w]hether a plaintiff has standing turns entirely on whether he has suffered an injury-in-fact, traceable to the defendant, which can be redressed by a favorable judgment; it has nothing to do with alleging they are a tester." *Deboard*, 2023 WL 11931165, at *3. "The Supreme Court [has] made it clear that tester status does not deprive a plaintiff of standing[,]" nor does tester status "automatically confer it either." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019) (Barrett, J.) (citing *Havens Realty*, 455 U.S. at 373–74).

Defendant McKenzie St. Louis, in its separate motion to dismiss, argues that even if Brown established an injury in fact as to the other Defendants, "[Brown's] alleged injuries are not fairly traceable to McKenzie St. Louis's conduct." Doc. 57 at 9. While LuxLiving, McKenzie-Annapurna One, BE Creative, VE Design, and Big Sur "served defined roles in the design and construction of the Property[,]" McKenzie St. Louis argues that its "alleged role rests entirely on conclusory 'information and belief' allegations." *Id.* at 10 (citing doc. 33 at ¶¶ 13–23). McKenzie St. Louis attached its Special Warranty Deed showing that it bought the property after the building's design and construction concluded. Doc. 49-1; doc. 49 at 2; *see Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (holding that in a factual attack, the court "considers matters outside the pleadings," and "the non-moving party does not have the benefit of 12(b)(6) safeguards"). And "[b]ecause the alleged accessibility violations are attributable to the design and construction decisions of other specifically identified defendants, [Brown] cannot

establish the causal nexus required to trace his alleged injuries to McKenzie St. Louis." Doc. 49 at 10.

Brown, in response, concedes that McKenzie St. Louis presented evidence that he lacks standing to maintain his FHA claims against it. Doc. 64 at 12. But Brown argues that McKenzie St. Louis is a "remediation defendant" that "should not be dismissed from the lawsuit," if the Court were to award injunctive relief. *Id.* at 12–13. Under Federal Rule of Civil Procedure 19(a)(1)(A), "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). So because McKenzie St. Louis now owns the property, if the Court were to award injunctive relief and order remediation, Brown argues that McKenzie St. Louis's presence in the suit is necessary to "accord complete relief among existing parties." Doc. 64 at 13; *see* Fed. R. Civ. P. 19(a)(1)(A).

But a rule of civil procedure cannot override the "irreducible constitutional minimum" of Article III standing. *Spokeo*, 578 U.S. at 338. Even so, Federal Rule of Civil Procedure 82 explicitly disclaims the ability of the civil-procedure rules to "extend or limit the jurisdiction of the district courts." Fed. R. Civ. P. 82. Because Brown concedes that he lacks standing to sue McKenzie St. Louis, the Court dismisses it from this case, though the Court acknowledges that McKenzie St. Louis might be subject to any injunctive relief the Court were to award in the future. *See* Fed. R. Civ. P. 65(d)(2)(C) (courts may enjoin "other persons who are in active concert or participation with" the named parties). The Court now turns to address Brown's future injuries against the remaining Defendants.

**b. Future injury**

Regarding Brown's alleged future injury, the Court finds Brown has standing. "A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Keller v. City of Fremont*, 719 F.3d 931, 947 (8th Cir. 2013) (citation omitted). In contrast, "'some[-]day' intentions—without any description of concrete plans, or indeed even any specification of *when* that some day will be—do not support a finding of the 'actual or imminent' injury." *Lujan*, 504 U.S. at 564 (emphasis added). While "'imminence' is concededly a somewhat elastic concept[,]" the Supreme Court has "insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Id.* at n.2.

Here, Brown alleges that he "looked at one or more units" and "observed . . . accessibility barriers that would interfere with his ability to access and use the facilities." Doc. 33 at ¶ 40. And because of "the existence of barriers and the lack of accessible features," he was "deterred . . . from renting an apartment at [McKenzie Apartments]." *Id.* at ¶ 41. He also alleged that he remains "currently in the market for an apartment in the area of the subject property." *Id.* at ¶ 49. And he "intends to return to the subject property and other rental property [sic] nearby to pursue a potential rental of an apartment, and [he] expects to return to" McKenzie Apartments once Defendants remediate the barriers. *Id*. Brown therefore "believes that [he] will be injured by a discriminatory housing practice that is about to occur." *Id.* at ¶ 61.

"At the pleadings stage, general factual allegations suffice to support standing." *Rydholm*, 44 F.4th at 1108. The Court therefore finds that Brown has standing to pursue injunctive relief at this early stage in the case. The Court notes, however, that it may later revisit this determination. *Cf. Steger*, 228 F.3d at 893 (stating that plaintiffs that presented no evidence,

at a preliminary injunction hearing, that they intended to enter or return to the non-ADA-compliant building failed to establish an injury-in-fact); *Meagley v. City of Little Rock*, 639 F.3d 384, 391 (8th Cir. 2011) (stating that at summary judgment the plaintiff failed to indicate that she would likely visit a non-ADA-compliant zoo in the imminent future).

## IV. Conclusion

The Court therefore denies Defendants' [37] [40] motions to dismiss. And the Court grants McKenzie St. Louis's [49] motion to dismiss. A separate partial order of dismissal accompanies this Memorandum and Order. The remaining Defendants must file any responsive pleading no later than September 10, 2026.

So ordered this 27th day of August 2026.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE